413 A.2d 687

**Eva M. KOHR, Appellant,**

v.

**Kenneth G. KOHR and Gloria A. Kohr, his wife.**

Superior Court of Pennsylvania.

Submitted March 19, 1979.

Filed Oct. 26, 1979.

---

322

David J. Brightbill, Lebanon, for appellant.
George E. Christianson, Lebanon, for appellees.

Before PRICE, SPAETH and LIPEZ, JJ.

PRICE, Judge:

The instant proceeding in equity was brought by appellant to secure a money judgment and to establish a constructive trust arising from funds paid by appellant to her son, appellee Kenneth Kohr. After a hearing, the chancellor entered a decree nisi denying the requests and finding that the funds had not been secured by Kenneth Kohr through undue influence. Exceptions were dismissed and the rule made absolute, prompting this appeal. On appeal appellant contends that the chancellor erred in finding that Kenneth Kohr did not engage in undue influence, and in refusing to enter a monetary judgment, order a constructive trust, or at a minimum, order him, sua sponte, to account for his expenditure of the funds. Finding no error, we affirm the order of the court of common pleas.

The salient facts of this appeal are as follows. On January 23, 1973, appellant's husband died. Shortly thereafter, appellant and appellees commenced residing together first in appellees' home in Northampton, Northampton County and then in appellant's home, also located in Northampton. As a result of the death of her husband, appellant received two checks totalling $11,000 from an insurance company and from a fraternal association. Appellant endorsed the checks over to Kenneth Kohr, who in turn deposited $10,000 in appellees' joint checking account and $1,000 in their joint savings account. Kenneth Kohr utilized the funds in the checking account to pay the debts and funeral expenses of his deceased father and to pay the living expenses of appellant and of appellees and their family.

In May of 1973, appellant expressed a desire to move to Lebanon County to be near her other children. In that month, she had sold her home for a net price of $29,000. The $29,000 from the sale of the home and $1,000 from appellees' savings account were transferred to a new checking account in a Reading bank in the name of appellant and Kenneth Kohr. In July 1973, appellant, appellees and their

family moved to Lebanon County where they resided with relatives. A lot was purchased by appellees and a home erected in February 1974. At appellant's request, the plans for the home were modified to include a fourth bedroom for appellant to use. During the initial construction of the home, appellant stated that she would give appellees all of her money as a gift to aid in the construction. Kenneth Kohr refused to accept all of the funds, but did accept a gift of $10,000. Shortly thereafter, appellant began dispensing considerable sums from the joint checking account that she held with Kenneth to finance the construction of the home. The procedure for disbursement was for Kenneth to request a check from appellant. Appellant had possession of the checkbook and would give a check to Kenneth who would make it out to the proper payee in the proper amount and then present it to appellant for her signature. In total, approximately $23,000 was expended from the account on various items of construction, and apparently no agreement was made whether the funds were a gift or a loan. At one point Kenneth Kohr informed appellant and various other relatives that appellant could continue to reside with appellees and that appellees would support her forever.

From February 1974 to October 1975, the parties lived uneventfully in the Lebanon home. In October 1975, appellant vacated the home under a belief that appellees simply no longer wanted her to continue to reside with them. On July 20, 1976, appellant filed suit requesting various forms of relief. First, she requested a monetary judgment in the amount of $33,000, representing the proceeds from the insurance policies ($11,000 minus $1,000 transferred to the Reading account) and the $23,000 paid by appellant for construction of the Lebanon County home. Second, she requested that appellees be designated trustees of a resulting trust in her favor in the Lebanon County home in the amount of $33,000. Finally, the complaint prayed "for such other relief as the Court may deem." The chancellor denied all recovery, and appellant appeals alleging various errors.

First, appellant contends that the evidence establishes the creation of a resulting trust. In this respect, we note that in an appeal from an equity proceeding a chancellor's findings of fact have the effect of a jury verdict and will not be reversed if supported by the evidence. *See Brentwater Homes, Inc. v. Weibley*, 471 Pa. 17, 369 A.2d 1172 (1977); *Payne v. Kassab*, 468 Pa. 226, 361 A.2d 263 (1976).

The principles relating to the creation of a resulting trust are well established. If a parent furnishes the purchase money and title to property is taken in the name of a child, a presumption arises that the parent intended the funds to be a gift. *See Ehnes v. Yowell*, 374 Pa. 17, 97 A.2d 56 (1953); *Hughes v. Bailey*, 202 Pa.Super. 263, 195 A.2d 281 (1963). When, however, the parent advances funds and manifests an intent to retain a beneficial interest, the gift presumption is rebutted and a resulting trust arises in favor of the parent. As summarized in the Restatement (Second) of Trusts § 442 (1959):

> "Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, *a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.*" (Emphasis added).

*See, e. g., McHenry v. Stapleton*, 443 Pa. 186, 278 A.2d 892 (1971); *Hughes v. Bailey, supra.*

Applying the above principles to the instant case, the chancellor found that a resulting trust had not been established. While there had been a purchase of property by appellees, and appellant had paid a portion of the purchase price,[1] appellant never manifested an intent to retain a beneficial interest. To the contrary, appellant informed appellees that "a better home you two have you will never get." (N.T. 35). While appellant initially promised to make a gift of only $10,000 towards the construction of the home,

---

1. In addition to the $23,000 contributed by appellant, appellees secured a loan for an additional $19,000 to aid in the construction.

the chancellor found that additional payments of over $13,-000 were made "voluntarily" without an express retention of interest. Thus, because of the relationship between the parties, appellant's silence creates a presumption that the funds were intended as a gift.

▪ Appellant argues, however, that a resulting trust arises in that the transfers were procured through undue influence on the part of Kenneth Kohr. Although appellant's claim is more in the nature of a constructive trust rather than a resulting trust, the issue is properly presented as "[a] court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." *Chambers v. Chambers*, 406 Pa. 50, 55, 176 A.2d 673, 675 (1962), *quoting Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 389, 122 N.E. 378, 381 (1919).

▪ In accordance with the case law of this Commonwealth, a constructive trust may be decreed under two different theories. Under Restatement (Second) of Trusts § 44 (1959), a constructive trust arises if a transferee conveys property to another as a result of "fraud, duress, undue influence or mistake, or . . . the transferee at the time of the transfer was in a confidential relation to the transferor . . . ." The Restatement and Pennsylvania case law have imposed an additional requirement, to-wit, that the fraud, duress, undue influence or abuse of a confidential relationship must be accompanied by an actual promise by the transferee to hold the property in trust and a reliance upon that promise by the transferor. *See Silver v. Silver*, 421 Pa. 533, 219 A.2d 659 (1966); *Moreland v. Metrovich*, 249 Pa.Super. 88, 375 A.2d 772 (1977).

▪ In the instant case, appellant has not alleged, and the evidence does not establish, that appellees made an express promise to retain appellant's property in trust. Therefore, appellant cannot recover under this theory.[2]

2. Even if an express promise had been made, appellant would still not be entitled to relief since the chancellor concluded that Kenneth

Pennsylvania law establishes a second theory by which a constructive trust may be decreed. A constructive trust may arise "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the grounds that he would be unjustly enriched if he were permitted to retain it . . . ." Restatement of Restitution § 160 (1937). Unlike § 44 of the Restatement of Trusts, this theory does not require an express promise to hold property in trust. Rather, "[t]he imposition of a constructive trust is an equitable remedy designed to prevent unjust enrichment." *Moreland v. Metrovich, supra,* 249 Pa.Super. at 97, 375 A.2d at 776, *quoting Yobe v. Yobe,* 466 Pa. 405, 411, 353 A.2d 417, 420–21 (1976).

Instantly, we do not believe that appellees have been unjustly enriched thus requiring the decreeing of a constructive trust. Appellant's payment of a considerable sum towards the construction of appellees' home prompted Kenneth Kohr to promise to support her for the remainder of her life. The chancellor did not make a specific finding whether the promise by Kenneth Kohr was intended as a quid pro quo in exchange for appellant's payment of funds, and indeed it is doubtful whether the parties gave serious consideration to whether they intended by their actions to establish a contractual relationship.[3] Nevertheless, the

Kohr had not engaged in undue influence or occupied a position of confidence with appellant. The chancellor found that while appellant turned over the every day administration of her affairs and the affairs of her husband's estate to Kenneth Kohr, she still maintained an independent judgment in many areas. The decision to sell the home in Northampton was hers alone, she participated in various decisions relating to the construction of the Lebanon home and voluntarily dispensed funds for that purpose, and she often conferred with and received advice from her other children. Thus, the chancellor's findings are well supported by the evidence and established that appellant did not acquiesce to any undue influence.

**3.** If established, such a contractual agreement would have been enforceable. Unlike many jurisdictions, the Pennsylvania Statute of Frauds does not include a provision for agreements that cannot be performed within one year, the principle obstacle confronting such agreements. *See Linn v. Employers Reinsurance Corp.,* 397 Pa. 153, 153 A.2d 483 (1959); *Bernstein v. Lipper Manufacturing Co.,* 307 Pa. 36, 160 A. 770 (1932); Act of March 21, 1772, § 1, *as amended,* Act of

chancellor found that appellees made every effort to fulfill their promise to support appellant and that appellees remain willing to resume their responsibilities at any time. The chancellor further found that appellant was not justified in vacating appellees' home in October 1975, and that it is her continued intransigence that keeps the parties apart. Therefore, we cannot conclude that appellees have been unjustly enriched thus requiring the imposition of a constructive trust.

Finally, appellant contends that the chancellor erred in not ordering appellees to account for the $10,000 held in their joint checking account. As stated, this money was paid by appellant to Kenneth Kohr shortly after the death of appellant's husband, and was derived from an insurance policy on her deceased husband. Unfortunately, as in the case of the promise of support, it is doubtful whether the parties actually specified for what purposes the funds were to be expended. In her original complaint, appellant alleged that appellees utilized the funds in the construction of the Lebanon home. At trial she claimed that the funds were intended to be used to defray her living expenses and that only $3,200 was actually spent for this purpose. Finally, on appeal she alleges that the funds were given with the expectation that they would be used to "pay the bills of the [deceased] father's" estate. Appellees contend that they used the $10,000 to defray the expenses of the estate of appellant's husband and the living expenses of appellant, appellees, and their children, and presented cancelled checks to verify these claims. Although the chancellor did not make a specific finding regarding the terms under which the funds were paid to Kenneth Kohr, he did state that he could find nothing wrong in the manner in which appellees expended the funds.

April 22, 1856, P.L. 532, § 4, Act of April 26, 1855, P.L. 308, §§ 1, 2, Act of May 10, 1881, P.L. 17, § 1, Act of May 13, 1927, P.L. 985, §§ 1–3, 33 P.S. §§ 1 to 8; 3 Williston on Contracts, § 495, p. 576 n. 2 (3d ed. 1960).

 The action of account is a writ brought against one, who by means of his office, or by some business he has undertaken, or some money he has received from another, is obliged to render an account to another, but refuses to do so. *See Ringer v. Finfrock*, 340 Pa. 458, 17 A.2d 348 (1941); *Griffith v. Willing*, 3 Binn. 316 (1811). In the instant case, the evidence is unclear regarding the circumstances under which Kenneth Kohr acquired the funds and whether appellees are under an obligation to account for their expenditure. Moreover, appellant never requested an accounting in her original complaint, and the evidence presented at the hearing related solely to the questions of undue influence, the abuse of a confidential relationship, and the creation of a resulting trust. In light of the uncertainty surrounding appellees' duties and the failure by appellant to request or present evidence relating to an action for accounting, we can find no error in the chancellor's failure to order such relief sua sponte.

Therefore, the order of the court of common pleas is affirmed.

SPAETH, J., concurs in the result.