629 A.2d 138

John A. HORNYAK and Frances M.
Hornyak, His Wife, Appellees,

v.

Harry W. SELL, Jr., Appellant,

v.

Debra Ann SELL, Appellee.

Superior Court of Pennsylvania.

Submitted June 22, 1993.

Filed Aug. 2, 1993.

Thomas M. Castello, Pittsburgh, for appellant.

Nancy J. Norkus, Pittsburgh, for Hornyak, appellees.

Before OLSZEWSKI, HOFFMAN and BROSKY, JJ.

OLSZEWSKI, Judge.

This is an appeal from a $5,000 judgment entered against appellant, Harry Sell, Jr. ["Harry"], in favor of John and Frances Hornyak [the "Hornyaks"]. Judgment was entered after the Honorable David R. Cashman found that Harry was obligated to repay a loan. Harry, the Hornyaks' son-in-law, argues that the Hornyaks failed to establish clear and convincing evidence to rebut the presumption that the money was given to him as a gift. We affirm.

Harry married the Hornyaks' daughter, Debbie, in 1977. In 1981, while Harry was a medical student and Debbie was employed as a registered nurse, the couple decided to purchase a house. Since their income was limited, Harry determined that he would need a supplemental $10,000 to cover closing costs. He approached both his parents and the Hornyaks and asked for $5,000 from each. Harry's father complied with the request, giving Harry a check for $5,000 and inscribing "loan for home" on the "memo" portion of the check. According to Debbie, however, she was adamantly opposed to Harry's solicitation of her father, since he was struggling to pay college expenses for three children and knew that two more would soon require the same. Debbie testified that Harry assured her that although he was currently still in medical school, "you know that when you are a surgeon, you make a lot of money; and I [won't] have any problem paying it back, and I [will] pay him back at whatever the interest rate would be." N.T. 12/15/88 at 23.

Mr. Hornyak testified that Harry initially contacted him, asking for $2,000. Mr. Hornyak replied he could loan him the money. When Harry called later in the month, however, raising the request to $5,000, Mr. Hornyak replied, "you know I don't have that kind of money on hand." N.T. 12/15/88 at 8. But after Harry's expression that he needed the $5,000, Mr. Hornyak arranged to borrow the additional $3,000 against his life insurance policies. He further testified that he gave Harry a $5,000 check with the understanding that Harry

would pay the money back at the going rate of interest (14.25% at the time) when he entered practice as a surgeon. N.T. 12/15/88 at 9. Although Mr. Hornyak noted in his checkbook and on his life insurance loan agreements that the funds represented a "loan" to Harry for a down payment on a home, he only wrote the word "house" on the check he made out to Harry. Harry deposited both checks, made out in his name only, into his and Debbie's joint account.

In 1984, Harry and Debbie separated and later divorced. Pending the divorce, the Hornyaks filed this action against Harry to collect the $5,000 loan.[1] Harry joined Debbie as an additional defendant, claiming that she was liable for contribution if he was ultimately liable to repay the loan. Judge Cashman heard the cause without a jury and found in the Hornyaks' favor.[2] He entered judgment against Harry alone for $5,000. It is from this judgment that Harry appeals, raising one issue: Did the Hornyaks rebut the presumption that the $5,000 forwarded to a Harry was a gift?

 First, we note that applying a presumption of a gift to this case is troublesome. Harry relies on the settled proposition that "[i]f a parent furnishes the purchase money and title to property is taken in the name of a child, a presumption arises that the parent intended the funds to be a gift." *Kohr v. Kohr*, 271 Pa.Super. 321, 413 A.2d 687 (1979). The presumption has its genesis in the Restatement (Second) of Trusts, § 443, which provides:

> Where a transfer of property is made to one person and the purchase price is paid by another, and the transferee is a wife, child, or other natural object of bounty of the person by whom the purchase price is paid, and the latter manifests

1. This lawsuit was transferred to the Family Division of the Court of Common Pleas in Allegheny County so that it could be resolved concurrently with Debbie and Harry's equitable distribution claims as well as a lawsuit filed by the Sells against Debbie for repayment of the $5,000 loan which they made toward the home purchase. No aspect of either related action is before us today.

2. Judge Cashman also found against Harry in his action against Debbie for contribution. Harry does not appeal that determination; we therefore limit our discussion to the issues squarely presented to us.

> an intent that the transferee should not have the beneficial interest in the property, a resulting trust arises.

*Id.* As Harry correctly notes, § 443 is not limited in its application to the natural children of the party who supplies purchase money, but also applies to persons related by marriage. *Mermon v. Mermon,* 257 Pa.Super. 228, 390 A.2d 796 (1978) (applying presumption to a daughter-in-law); *Hiester v. Hiester,* 228 Pa. 102, 77 A. 419 (1910) (same). The problem, here, however, is that the Hornyaks are not seeking to impose a resulting trust on the property. A resulting trust is an equitable trust, not subject to the statute of frauds, which imposes an obligation on the title holder of property to hold it in trust for the beneficial owner. Here, the Hornyaks sought reimbursement of the $5,000 on the basis of a contractual relationship, which is a distinct, and enforceable, theory of recovery. *Kohr,* at 329, 413 A.2d at 691. We need not resolve the question of whether the form of relief sought by the Hornyaks should determine whether the presumption applies, however, because we find that even if it did apply, it was rebutted.

In order to rebut the presumption of a gift, the Hornyaks are obligated to establish their intention to loan the money by clear and convincing evidence. *Mermon, supra.* Our Supreme Court recently explained the "clear and convincing" standard:

> [t]he witnesses must be found to be credible, that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order, and that their testimony is so clear, direct, weighty, and convincing as to enable the jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

*Lessner v. Rubinson,* 527 Pa. 393, 592 A.2d 678 (1991).[3] We find that the Hornyaks met this standard.

As we have noted, Mr. Hornyak and Debbie testified that Harry represented that he intended to repay the $5,000 as

---

**3.** We will apply this standard with equal force to a trial judge who sits as factfinder, as in this case.

soon as he graduated from medical school and entered private practice as a surgeon.[4] Mr. Hornyak described in detail the conversations between him and Harry which led up to the day that Harry accepted the check. Moreover, Mr. Hornyak described in detail Harry's insistence that he not receive the check by mail. Harry thus drove to Mr. Hornyak's home in State College to accept the check. To all of this, Harry testified only that he "could not recall" the events and that "my perception of [the events surrounding the issuance of the check] in my mind, it was a gift." N.T. 12/15/88 at 32. Judge Cashman specifically noted that he resolved the issue of credibility against Harry and in favor of the Hornyaks. Trial court opinion at 9.

Furthermore, Mr. Hornyak, a father who works as an insurance salesman and is struggling to pay for five children's educations, borrowed $3,000 against his life insurance policies in order to collect the money he gave Harry. We agree with the trial court that "it is difficult, if not impossible, for one to contemplate that someone would gift money to a third party who is not their child, even though he might be an in-law, and go into debt to make that 'gift' without the expectation that it would be repaid [sic]." Trial court opinion, at 7. Finally, despite the notation on his check that the payment was for a "house," Mr. Hornyak indicated in his checkbook that the check was drawn as a "loan." Interestingly, Harry's father wrote "loan for house" on a check made to Harry for the same purpose as Mr. Hornyak's. We find this evidence amply sufficient to rebut any presumption that the check was intended as a gift.[5]

4. This prediction certainly came to fruition. The trial judge, who also sat for the parties' equitable distribution claims, noted in his opinion that Harry, who worked as a hospital resident at the time he and his wife purchased the home earning approximately $28,000 per year, earned an annual income of $127,000 at the time of the trial on this matter. Trial court opinion at 8.

5. We also reject Harry's corollary argument that there was no meeting of the minds to establish a loan agreement. Our discussion of the evidence above clearly indicates to the contrary.

■ We note that Harry places much emphasis on the fact that no writing supported this contract, and that the check contained no indication that it was meant as a loan. First, it is clear that Harry could orally agree to repay the loan, since "the Pennsylvania Statute of Frauds does not contain a provision for agreements that cannot be performed within one year, the principle obstacle confronting such agreements." *Kohr*, at 330, 413 A.2d at 691 n. 3. Second, our review of analogous caselaw indicates that Mr. Hornyak's signing a check for deposit in Harry's account does not conclusively establish that it was meant to be a gift. *See Lessner, supra*, (depositing money into a joint bank account, standing alone, does not establish a gift); *Estate of Chiara*, 467 Pa. 586, 359 A.2d 756 (1976) (savings certificates drawn in favor of plaintiff found to be a gift in light of statement by drawer that plaintiff should "keep it for myself to pay for the care of what me and may wife had done for her through the years"). Thus, Judge Cashman did not err in enforcing Harry's oral agreement to repay the $5,000.

Judgment affirmed.