J-A23035-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| IN RE: RICHARD D. COWAN, DECEASED | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: NORMA D. COWAN | |
| | No. 312 WDA 2018 |

Appeal from the Order Entered February 13, 2018
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: 245 of 2016

BEFORE:   BOWES, SHOGAN, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    FILED MARCH 19, 2019

Appellant, Norma D. Cowan, appeals from the February 13, 2018 order denying her claim against the estate of her son, Richard D. Cowan ("Decedent").  We reverse and remand.

At the time of his death at age 57 on November 17, 2015, Decedent, an internationally known opera singer, and his estranged wife, Uliana Kozhevnikova, owned a home in Pittsburgh (the "Pittsburgh Home") subject to a five-year $220,000.00 balloon mortgage.  In 2014, while Decedent was working in France, Kozhevnikova began receiving letters threatening foreclosure on the Pittsburgh Home.  Appellant contacted his parents (Appellant and Paul Cowan[1]) for help.  Decedent's parents, with the help of

_____

[1] Appellant and Paul Cowan filed the claim jointly.  Paul Cowan subsequently passed away.  N.T. Hearing, 1/16/18, at 3.

their financial advisor, Matthew Olver, devised a plan to pay the $197,058.66 outstanding on the mortgage of the Pittsburgh Home. Decedent's parents borrowed $30,000.00 and liquidated $26,858.66 in investment funds, and Decedent contributed $140,200.00 from an IRA.

According to Appellant, Decedent intended to repay his parents and replenish his IRA with proceeds from the sale of property Decedent owned in France (the "French Property"). When it became evident that Decedent would not consummate the sale within the 60-day IRS grace period, Decedent's parents took out a line of credit of $140,200.00 to replenish Decedent's IRA, which they did by wire transfer on November 19, 2014. In August of 2015, Decedent's parents asked his sister, Marcy Cowan, to arrange for a promissory note memorializing Decedent's obligation to repay his parents. Decedent died suddenly in Pittsburgh in November of 2015, and there is no evidence that he ever received or signed a note.

The record reveals that the French Property sold, with net proceeds to Decedent of $110,530.00, on October 14, 2015 shortly before Decedent's passing. From the proceeds, he made a partial repayment to his parents of $59,464.08 toward the $197,058.66 they advanced to him. Unable to resolve the remaining outstanding balance with Kozhevnikova, the administratrix of Decedent's estate, Appellant filed a claim for $151,106.10 on May 15, 2016, representing the outstanding unpaid principle and interest, and a supplemental claim of $24,350.12 on December 24, 2017 for additional

accrued interest. The trial court conducted a hearing on January 16, 2018 and, on February 13, 2018, issued the order denying Appellant's claim. This timely appeal followed.

Appellant presents two assertions of error:

1. The trial court erred as a matter of law and abused its discretion by denying that part of the claim seeking repayment of the loan made by Paul and Norma Cowan to [Decedent], when the record established by clear and convincing evidence that a loan was made and not a gift.

2. The trial court erred in not admitting the emails from Decedent to Cuyler Etheredge finding them to be hearsay and not authenticated.

Appellant's Brief at 5.

Our standard of review is as follows:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.

In re Fiedler, 132 A.3d 1010, 1018 (Pa. Super. 2016), appeal denied, 145 A.3d 166 (Pa. 2016). "However, we are not constrained to give the same deference to any resulting legal conclusions." Id. Our review of questions of law is de novo, and our scope of review is plenary. "[A] claim against a decedent's estate can be established and proved only by evidence which is clear, direct, precise and convincing." Estate of Allen, 412 A.2d 833, 836 (Pa. 1980). "[T]he burden of proof lies upon the claimant." Id.

The trial court found that the transfer of funds from Decedent's parents to Decedent was presumed to be a gift, and that Appellant failed to adduce sufficient evidence to overcome that presumption. The trial court's decision was legally erroneous and devoid of support in the record. The trial court relied on Hornyak v. Sell, 629 A.2d 138 (Pa. Super. 1993), in which we cited the "settled proposition that '[i]f a parent furnishes the purchase money and title to property is taken in the name of a child, a presumption arises that the parent intended the funds to be a gift.'" Id. at 140 (quoting Kohr v. Kohr, 413 A.2d 687, 689 (Pa. Super. 1979)). Hornyak explained that this presumption arose from § 443 of the Restatement (Second) of Trusts:

> Where a transfer of property is made to one person and the purchase price is paid by another, and the transferee is a wife, child, or other natural object of bounty of the person by whom the purchase price is paid, and the latter manifests an intent that the transferee should not have the beneficial interest in the property, a resulting trust arises.

Id. at 140 (quoting Restatement (Second) of Trusts § 443).

In Hornyak, the defendant's father-in-law lent him $5,000.00 toward closing costs for the purchase of a home. This Court declined to consider whether the presumption applied, noting sufficient evidence—including oral promises of repayment from the son-in-law—that the parties to the transaction did not intend a gift. Id. at 141-42.

The presumption is plainly inapplicable here, as no transfer of property occurred. Rather, Decedent's parents provided funds to help him pay off a balloon mortgage on the Pittsburgh Home, which Decedent already owned.

Then, Decedent's parents provided additional funds so that Decedent could replenish a tax-sheltered retirement account instead of paying taxes and penalties to the IRS. Neither the trial court nor the estate cites any law holding that a gift presumption applies under these circumstances.

Furthermore, as in Hornyak, the record provides ample evidence that Decedent and his parents intended the funds to be a loan. Indeed, the record is devoid of evidence indicating otherwise. In her claim against the estate, Appellant documented an account she set up to receive, by wire transfer, the proceeds of Decedent's sale of the French Property. Claim, 5/15/16, at ¶ 13 and Attachment F.[2] According to the claim, the Decedent satisfied $59,464.08 of his debt to his parents from the proceeds of the French Property sale. Id. at ¶ 17(e).

At the hearing, Olver testified that he discussed with Decedent's parents the possibility of making a gift to Decedent, and told them that, if they did so, they would need to file a tax return acknowledging the money as such. N.T. Hearing, 1/16/18 at 29. To Olver's knowledge, Decedent's parents filed no such return. Id. at 29, 47. Instead, Olver recommended structuring the transaction as a loan in order to avoid a significant gift tax, and that is how the parties proceeded. Id. at 29. Furthermore, Olver testified that, "[b]ased on people of their age [90 and 87 as of the filing of the claim], I would not

_____

[2] In an apparent typographical error, the document lists the originator of the funds as "Richard M. Cowan" rather than Richard D. Cowan.

have recommended that they extract $200,000 from their investment portfolio that would not be there for their own wellbeing." Id. at 48.

Olver also referenced a chain of emails in which the Decedent wrote: "I can come up with what I can here, but if they loan me $50,000, would that finish this off?" Id. at 31. Further, "Would this be a huge dilemma financially for them if this is just a loan to be repaid by a family member?" Id. at 32. Olver testified that he would not have advised Decedent's parents to take out a line of credit of $200,000.00 to make a gift. Id. at 42-43. He advised that course of action only because they expected repayment. Id. Olver testified that he recommended a note. Id. at 43. As reflected above, the record does not establish that Decedent ever signed a note.

Marcia Cowan, Decedent's sister, testified about a promissory note that was prepared to "memorialize" the debt Decedent owed to his parents. Id. at 63. She tried to get a copy of the note to Decedent through Kozhevnikova. Id. at 64. Kozhevnikova did not recall ever receiving the note and said she did not present a note to Decedent. Id. at 85-86. As noted above, there is no evidence that Decedent signed it before his death. Id. at 70-71.

In summary, the trial court committed an error of law in relying upon an inapplicable gift presumption. Regardless of the presumption, the record contains clear and convincing evidence that the transactions in question were loans. The claim documents an account Appellant opened up and funded with a wire transfer from Decedent representing the proceeds of the sale of the

French Property. Decedent's debt to his parents was partially paid off from those funds. Moreover, Olver testified that the parties structured the transaction as a loan in order to avoid a significant gift tax. He also testified that Decedent's parents were not in position to gift the amount of money involved, given their ages and their financial resources. Olver also testified about emails in which Decedent expressly referred to the arrangement as a loan. The record clearly establishes that Decedent's parents acted to help Decedent stave off financial calamities—first a mortgage foreclosure and then federal taxes and penalties on a tax-deferred retirement account. No evidence supports a finding that Decedent's parents simply gifted money to him.

The absence of a signed promissory note does not alter our conclusion. On the facts of this case, the absence of a signed note is not surprising. Decedent's sister attempted to get the note to Decedent through his estranged wife, as Decedent was in France at the time. Kozhevnikova denied receiving the note or presenting it to him. Decedent's failure to sign the note can be attributed to his sudden and unexpected passing, rather than his refusal to acknowledge the debt. As we have already discussed, there is no evidence that any party treated the money as a gift rather than a loan.

In her second assertion of error, Appellant argues the trial court erred in refusing to admit into evidence two emails from Decedent's email account in which he expressly referred to the transaction as a loan. Given our analysis of Appellant's first issue, we find it unnecessary to resolve the second. The

record contains clear and convincing evidence of a loan regardless of the disputed emails. Admission of the disputed emails would result in cumulative evidence, inasmuch as Olver testified to several emails in which Decedent acknowledged the debt.

For all of the foregoing reasons, we reverse the trial court's order and remand for further proceedings consistent with this Memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/19/2019