J-A21021-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| ERIC BOYKO | : IN THE SUPERIOR COURT |
| | : OF |
| | :       PENNSYLVANIA |
| v. | : |
| | : |
| | : |
| CARL N. BOYKO | : |
| _____ | : |
| DONALD BOYKO | : |
| | :   No. 107 EDA 2023 |
| | : |
| v. | : |
| | : |
| | : |
| ERIC BOYKO | : |
| | : |
| | : |
| APPEAL OF: CARL N. BOYKO AND | : |
| DONALD BOYKO | : |
| _____ ERIC | : |
| BOYKO | : |
| | : |
| | : |
| v. | : |
| | : |
| | : |
| CARL N. BOYKO | : |

Appeal from the Order Entered December 22, 2022
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2020-C-0881,
2021-C-0875, 2022-C-0067

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.:                          **FILED DECEMBER 29, 2023**

Appellants, Donald Boyko ("Donald") and Carl N. Boyko ("Carl"), appeal

from the December 22, 2022 Order granting the motion for summary

judgment filed by Eric Boyko ("Eric") in this intra-family property dispute. After careful review, we affirm.

The relevant facts and procedural history are as follows. In November 2004, Donald conveyed 10 properties to his sons Eric and Carl pursuant to an alleged oral agreement with Eric and Carl that they would reconvey the properties to Donald when Donald asked them to do so.

On March 13, 2006, counsel for Donald sent a letter to Eric requesting that Eric execute deeds reconveying his interest in the properties to Donald. Eric did not execute the deeds as requested. Around one year later, on March 1, 2007, new counsel for Donald sent a letter to Eric and Carl renewing the request that they reconvey the properties to Donald. The copy of this letter provided to Donald from his counsel contains a note stating that if Eric did not comply with Donald's request and litigation became necessary, there were legal theories that Donald could pursue in the litigation. On May 8, 2007, Donald's counsel advised Eric by letter that he had prepared deeds of reconveyance for Eric's signature. Ultimately, Carl signed deeds of reconveyance, but Eric took no action to do so.

While his sons retained ownership over the properties, Donald continued to make improvements to them, pay real estate taxes and insurance, and collect rents generated by them in reliance on Eric's and Carl's promise to reconvey the properties to Donald upon demand.[1]

_____

[1] Donald represents that in the almost 20 years since he conveyed the properties to his sons, he has spent over $600,000 maintaining the properties.

In 2018, during a dispute regarding reconveyance of the properties, Eric assaulted Donald. Initially, Donald sought a protection from abuse ("PFA") order against Eric. Donald later agreed, however, to refrain from obtaining the order in exchange for Eric agreeing to reconvey the properties to Donald. Eric subsequently reneged on the agreement and did not reconvey the properties.

On July 31, 2019, Eric filed a partition action against Carl in Northampton County seeking to partition 9 of the 10 properties.[2] On July 22, 2020, Eric filed a separate action in Luzerne County to partition the remaining property.[3] Carl defended the partition actions by alleging that Donald is the beneficial owner of all the properties and filed counterclaims against Eric asserting that Eric breached his contractual obligation to reconvey the properties to Donald and seeking specific enforcement of Eric's alleged duty to reconvey the properties to Donald.

In April 2021, Donald filed a separate action in Lehigh County against Eric requesting imposition of a resulting and/or constructive trust on all the properties, with an alternative cause of action seeking restitution for the $600,000 he spent over the years maintaining the properties.[4]

---

[2] On March 4, 2022, the Northampton County Court of Common Pleas transferred this action to Lehigh County.

[3] The Luzerne County Court of Common Pleas subsequently transferred that action to Lehigh County.

[4] The Lehigh County Court of Common Pleas consolidated the partition actions brought by Eric with the action filed by Donald.

On September 30, 2022, Eric filed a motion for summary judgment seeking judgment as a matter of law with respect to Donald's claims and Carl's counterclaims. Following a hearing on the motion, on December 22, 2022,[5] the trial court entered an order dismissing Donald's claims and Carl's counterclaims and entering summary judgment in Eric's favor.

With respect to Carl, the trial court concluded that Carl lacked standing to assert a counterclaim against Eric because the harms he alleged that Eric caused by his refusal to reconvey the properties to Donald only adversely affected Donald and not Carl.

With respect to Donald's claims, the court concluded that Donald was not entitled to imposition of a resulting trust as a matter of law because Donald did not pay the purchase price for the properties at the time that he transferred title to the properties to Eric and Carl.[6] The court further determined that, although a genuine issue of material fact existed as to whether a constructive trust arose under the facts of this case, the record is clear that Donald was aware as early as March 2006, and certainly by mid-2007, that Eric was not willing to reconvey the properties. Thus, the court

_____

[5] The trial court initially filed an order on December 20, 2022, entering judgment against Donald. Two days later, on December 22, 2022, the court amended its order to dismiss Carl's counterclaims.

[6] "Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a result in trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property." Restatement (Second) of Trusts § 442 (1959).

concluded that Donald's claim for a constructive trust was barred by the five-year statute of limitations. The court similarly found that Donald's claim for restitution based on a theory of unjust enrichment was barred by the statute of limitations.

This timely appeal followed.[7]

Appellants raise the following seven issues for our review:

I.      Did the court below commit an abuse of discretion and an error at law in determining that Carl Boyko lacked standing in the consolidated cases?

II.     Did the court below commit an abuse of discretion and an error at law in determining that the statute of limitations barred recovery by Donald Boyko and Carl Boyko so as to grant summary judgment to Eric Boyko?

III.    Did the court below commit an abuse of discretion and an error at law in determining that the pleaded defense of laches and statute of limitations did not bar Eric Boyko from recovery?

IV.     Did the court below commit an abuse of discretion and an error at law in determining that the pleaded defense of estoppel did not bar Eric Boyko from summary judgment?

V.      Did the court below commit an abuse of discretion and an error at law in determining that the doctrines of promissory estoppel and part-performance did not bar entry of summary judgment in favor of Eric Boyko?

VI.     Did the court below commit an abuse of discretion and an error at law in the denial of the cause of action in restitution?

---

[7] The trial court did not order Appellants to file a Pa.R.A.P. 1925(b) statement. On January 12, 2023, the trial court filed a "Pa.R.A.P. 1925(a) Statement" directing this Court to its December 22, 2022 Memorandum Opinion for an explanation of its reasons for granting Appellee's motion for summary judgment.

VII. Did the court below commit an abuse of discretion and an error at law in determining that Count III in restitution is "derivative" and barred by the statute of limitations?

Appellants' Brief at 7-8 (reordered for ease of disposition, unnecessary capitalization omitted).

**A.**

Appellants challenge the trial court's order granting summary judgment in favor of Appellee. Our Supreme Court has clarified our role as the appellate court as follows:

> On appellate review, [ ] an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But[,] the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals. To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

*Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (citation omitted).

A trial court may grant summary judgment "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citation omitted); *see also* Pa.R.Civ.P. 1035.2(1). "When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the nonmoving party." *Summers*, 997 A.2d at 1159. "In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact

against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." *Id.* (citation and internal quotation marks omitted).

**B.**

In their first issue, Appellants assert that the trial court erred in concluding that Carl lacked standing to file counterclaims for breach of trust against Eric. Appellants' Brief at 34-36. They contend that, as the defendant in Eric's partition action, Carl has an "absolute right" to file counterclaims. *Id.* at 34. They also argue that because "Carl is the defendant in the action brought by Donald against Carl and Eric although Carl has agreed with his father and signed deeds of reconveyance to his father in 2007[,]" Pa.R.Civ.P. 1030 "permits this affirmative defense."[8] *Id.* Appellants baldly conclude, therefore, that the trial court was "simply in error in determining that Carl lacks standing to assert the counterclaims because he is not 'aggrieved' meaning lack of standing." *Id.* at 34-35.

It is well-settled that "failure to argue and to cite any authority supporting any argument constitutes a waiver of issues on appeal." *Jones v. Jones*, 878 A.2d 86, 90 (Pa. Super. 2005). "This Court will not act as counsel

_____

[8] Pa.R.Civ.P. 1030, titled "New Matter," provides, at subsection (a), a non-exhaustive list of the affirmative defenses a defendant is required to plead in a responsive pleading under the heading "New Matter." At subsection (b), Rule 1030 explains that a defendant need not plead the affirmative defenses of assumption of the risk and comparative and contributory negligence. Pa.R.Civ.P. 1030(b). In their Brief, Appellants have neither provided the text of the Rule nor identified which of the affirmative defenses discussed in the Rule they pleaded.

and will not develop arguments on behalf of an appellant." ***Bombar v. West American Ins. Co.***, 932 A.2d 78, 93 (Pa. Super. 2007).

Instantly, Appellants have failed to develop this issue with citation to controlling case law, as required by our Rules of Appellate Procedure.[9] ***See*** Pa.R.A.P. 2119(a) (requiring an appellant to include in his argument "discussion and citation of authorities"). Appellants' failure to develop this issue with citation to and discussion of relevant authority has substantially hindered our ability to conduct meaningful appellate review of this issue. Accordingly, this issue is waived. ***See Bombar***, 932 A.2d at 95; ***Jones***, 878 A.2d at 90.

## C.

In their second issue, Appellants claim that the trial court erred in determining that the statute of limitations barred Donald's claims for imposition of a constructive trust.[10] Appellants' Brief at 15-18. Appellants

---

[9] The only cases cited by Appellants are two upon which the trial court relied— ***Bergdoll v. Kane***, 731 A.2d 1261 (Pa. 1999), and ***In re: Hickson***, 821 A.2d 1238 (Pa. 2003). Appellants' analysis of these cases extended no further than the summary conclusion that "[n]either of these cases are relevant to the case at bar." Appellants' Brief at 35.

[10] Appellants also claim that the trial court erred in declining to impose a resulting trust based on the expiration of the statute of limitations. Appellants' Brief at 15-16. As noted above, however, the court determined Appellants had not established a right to a resulting trust as a matter of law not because the statute of limitations had expired, but because Donald did not pay the purchase price for the properties at the time that he transferred title to the properties to Eric and Carl. Appellants have not challenged that determination.

contend that the statute of limitations on this cause of action did not begin to run until February 5, 2018, when Eric purportedly agreed to reconvey the properties in exchange for Donald abandoning his pursuit of a PFA order against Eric. *Id.* They argue that Donald timely filed his Complaint to enforce Eric's "renewal promise" within the four-year statute of limitations applicable to promissory estoppel. *Id.*

Following our review of the record, the briefs of the parties, the applicable law, and the trial court Opinion, we agree with the trial court and conclude that Appellants' claim for the imposition of a constructive trust was barred by the applicable statute of limitations. The Honorable Thomas M. Caffrey has authored a well-reasoned Opinion explaining his conclusion with citation to relevant case law and statutes, and we affirm this issue on the basis of that decision. *See* Trial Ct. Op., 8-13, 12/20/22 ((1) explaining that Donald's claim for enforcement of a constructive trust is barred by the 5-year statute of limitations set forth in 42 Pa.C.S. § 5526(3) because Donald's cause of action arose as early as 2006, and no later than 2007, when Donald requested reconveyance of the properties and Eric refused; (2) rejecting Donald's claim that the cause of action arose as late as 2018 when Eric orally renewed his promise to reconvey the properties in exchange for Donald refraining from seeking a PFA order because of Donald's counsel's inability to provide authority to support his argument that the "acknowledgement doctrine" or theory of "renewal promise," (which are limited to promises to pay a money debt) permit a plaintiff to proceed with an equitable claim for

imposition of an implied trust that is otherwise barred by the statute of limitations; and (3) concluding that any attempt by Donald to recharacterize his claim as an action for specific enforcement to enforce an oral contract would fail because the Statute of Frauds bars enforcement of oral contracts to convey real property). Thus, no relief is due.

## D.

In their third issue, Appellants complain that the trial court erred in determining that the doctrine of laches did not bar Eric "from recovery on the face of these pleadings and upon a recitation of the facts set forth in the opinion of the trial court." Appellants' Brief at 19. In support of this claim, Appellants highlight that, since 2004, Donald has paid all taxes, insurance, maintenance, and improvements on the property, collected all rents, and alone has exercised dominion and control over the properties, in reliance on his sons' promises to reconvey them. *Id.* at 18. They also emphasize that Eric never affirmatively challenged Donald's ownership of the properties. Appellants assert that "[n]ineteen years of prejudice has been suffered by Donald as a result of [Eric's] silent truculence." *Id.* at 21. Essentially, Appellants assert that, notwithstanding the expiration of the statute of limitations, it is unfair that Eric retain ownership of the properties. They, therefore, conclude that this Court "must reverse the trial court in all three consolidated cases and enter judgment in favor of Donald [] in light of the clear application of the [d]octrine of [l]aches." *Id.*

Laches is an equitable remedy that "bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another." *Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988). It is well-settled that the doctrine of laches applies "by reason of the original transactions having become so obscured by time as to render the ascertainment of the exact facts impossible." *Fulton v. Fulton*, 106 A.3d 127, 135 (Pa. Super. 2014) (citation omitted). *See also* 14 Standard Pennsylvania Practice 2d § 79:79, entitled "Laches, generally" ("It is clearly in the public interest that, at some ascertainable time, a party must be required to discover the full extent of his or her claim and to assert it in the courts so as to prevent the threat of litigation from hampering indefinitely the business of government or private parties.").

"[I]n order to prevail on an assertion of laches, **respondents** must establish: a) a delay arising from petitioner's failure to exercise due diligence; and b) prejudice to the respondents resulting from the delay." *Sprague*, 550 A.2d at 187 (citations omitted, emphasis added). "[T]he sort of prejudice required to raise the defense of laches is some changed condition of the parties which occurs during the period of, and in reliance on, the delay." *Id.* at 188. The question of laches is factual and is determined by examining the circumstances of each case. *Id.* Thus,

> The correct inquiry in determining whether [one's] conduct resulted in a want of due diligence is to focus not upon what the plaintiff knows, but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him[.] What the law requires of petitioner is to

discover those facts which were discoverable through the exercise of reasonable diligence.

*Id.* (citations and internal quotation marks omitted).

In other words, a laches defense is just that—an affirmative **defense** designed for the benefit of a **defendant** (here Eric) who has relied on a **plaintiff's** delay in enforcing his rights. Furthermore, the case law is clear that, when conducting an inquiry into whether a defendant is entitled to the benefit of a laches defense, the court must focus on the **conduct of the plaintiff** (here Donald) to determine whether the **plaintiff** neglected to exercise due diligence in bringing his case. *See Fulton*, 106 A.3d at ("Laches bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another.") (citation omitted).

Turning this concept on its head, Appellants have asserted the novel theory that, notwithstanding Donald's own lack of due diligence in bringing his claim for imposition of a constructive trust against Eric, the trial court erred in not considering Eric's conduct before granting summary judgment in favor of Eric. Appellants have, however, failed to support this interpretation and

application of the doctrine of laches with any controlling authority.[11]

Accordingly, this claim merits no relief.[12]

**E.**

In their fourth issue, Appellants assert that because Eric did not affirmatively refuse to reconvey the properties in 2006 and 2007, and has "unclean hands," the trial court erred in failing to find Eric estopped from seeking partition of the properties and in denying Donald's request for the imposition of a constructive trust on them.[13] Appellants' Brief at 23-27. Appellants restate the facts of the underlying dispute that they deem favorable to their defense against partition and in favor of their request for a constructive trust and conclude that "surely the [d]octrines of [l]aches,

---

[11] We acknowledge that Appellants cite to **Gabster v. Mesaros**, 220 A.2d 639 (Pa. 1966), for a definition of the doctrine of laches. Appellants also referenced one non-precedential memorandum opinion from this Court, **Quarello v. Clinger**, without providing its citation, and state merely that "[t]his Court denied recovery to the [plaintiff] because he was barred by laches as is Eric []." Appellants' Brief at 21. **Quarello** is inapposite and, therefore, provides no support for Appellant's argument. **See Quarello v. Clinger**, 251 A.3d 1223 (Pa. Super. 2021) (unpublished memorandum) (affirming the trial court's conclusion that the **defendant** demonstrated the affirmative defense of laches).

[12] Appellants also baldly assert that the doctrine of laches precludes entry of summary judgment in Eric's favor in his partition actions against Carl. **See** Appellants' Brief at 19. We find this argument waived, however, as Appellants have failed to develop it with citation to and discussion of relevant authority as required by Pa.R.A.P. 2119(a).

[13] To the extent that Appellants reassert their claim that laches bars Eric from judgment in his favor, we find it unavailing for the reasons set forth at Section D. of this Memorandum Opinion.

[e]stoppel, and [u]nclean [h]ands must prevail in the equity actions[.]" *Id.* at 26.

In support of this claim, Appellants refer only to *Quarello v. Clinger*, 251 A.3d 1223 (Pa. Super. 2021) (unpublished memorandum),[14] which we note as a prefatory matter does not pertain to a request that a court impose a constructive trust and is, therefore, not relevant to Donald's claim that the court erred in refusing to impose a constructive trust on the properties. Moreover, to the extent that Appellants rely on *Quarello* to support their claim of trial court error with respect to Eric's partition action, their discussion of the facts of *Quarello* is non-existent and their application of its holding is, at best, superficial. *See* Appellants' Brief at 25-26 ("*Quarello* [] clearly presents the issue of laches and equitable estoppel outweighing any consideration of statutes of limitations. . . . The *Quarello* Court found both laches and unclean hands in dismissing the action in partition."). Appellants' failure to cite to any authority in support of their constructive trust argument and their failure to develop their argument that the trial court erred in ordering partition of the properties notwithstanding Eric's purported "unclean hands." precludes our ability to conduct meaningful appellate review. The issue is, thus, waived.

**F.**

In their fifth issue, Appellants assert that the trial court erred in concluding that the Statute of Frauds barred Donald's claim for imposition of

---

[14] In this section of their Brief to this Court, Appellants have again failed to provide the citation for this non-precedential opinion.

a constructive trust.[15]  Appellants' Brief at 27-29.  Appellants contend that "substantial issues of fact which are outstanding between the parties" which require reversal of the order granting summary judgment in favor of Eric on this claim.  *Id.* at 27.  In particular, Appellants claim: (1) "the statute of frauds is not applicable in an action to impose a constructive trust in that the fraud involved becomes an exception to the statute of frauds"; (2) "the part performance of Donald . . . carries this case out of the statute of frauds under the doctrine of part performance"; (3) Eric's 2018 promise to reconvey the properties "constitutes promissory estoppel although good consideration was also furnished by Donald [] in not obtaining the court order premised on the assault and battery perpetrated by his son." *Id.* at 28.

Although Appellants have provided citations to three decisions of this Court in support these assertions,[16] they have failed to discuss facts or the holdings in those cases at all or to apply the facts of the instant matter to

---

[15] Appellants also assert that the trial court erred in rejecting Donald's claim for a resulting trust based on the Statute of Frauds.  We reiterate that the actual basis for the trial court's rejection of Donald's request for a resulting trust was that Donald did not establish the right to a resulting trust as a matter of law because he did not pay the purchase price for the properties at the time that he transferred title to the properties to Eric and Carl.  We, thus, decline to address any allegations of trial court error with respect to the Statute of Frauds and Donald's request for imposition of a resulting trust.

[16] Without providing any context or discussion of the facts, Appellants have cited to **In re: Estate of Brojack**, 467 A.2d 1175 (Pa. Super. 1983), **Eastgate Enterprises, Inc. v. Bank and Trust Co. of Old York Road**, 345 A.2d 279 (Pa. Super. 1975) (*en banc*), and **Concorde Investments, Inc. v. Gallagher**, 497 A.2d 637 (Pa. Super. 1985).

those cases. We again decline to act as Appellants' counsel by developing their arguments for them. We, therefore, find this issue waived.

**G.**

In their related sixth and seventh issues, Appellants aver that the trial court erred in entering summary judgment with respect to Donald's alternative cause of action for unjust enrichment. Appellants' Brief at 29-32. Donald argues that the trial court erred in determining that his unjust enrichment claim was derivative of his claim for imposition of a constructive trust, by "for whatever reason"[17] ignoring Eric's purported "renewal promise" to reconvey the properties. *Id.* at 32-33. He further argues that he is entitled to restitution based on his reliance on Eric's promise to reconvey the properties to him at the time of the initial 2004 conveyance and the 2018 "renewal promise."[18] *Id.* at 30-31.

---

[17] Notwithstanding Appellants' professed ignorance as to why the trial court rejected Appellants' assertion that Eric's alleged 2018 "renewed promise" to reconvey the properties did not re-start the statute of limitations for Donald to bring a claim for imposition of a constructive trust, the trial court provided a reason for rejecting this argument, *i.e.*, Donald's failure to provide any legal authority to "support the proposition that the theory of renewal promise, which removes the bar of the statute of limitations where a debtor promises to pay an existing monetary debt, permits a plaintiff to proceed with an equitable claim for imposition of an implied trust that is barred by the statute of limitations." Trial Ct. Op. at 10.

[18] Appellants also argue that Donald is entitled to restitution based on the doctrine of laches. This invocation of the doctrine of laches as a basis for relief fails here for the same reasons as in Section D., *supra.* Simply, as the plaintiff asserting an unjust enrichment claim against Eric, Donald may not invoke laches as a basis to prevail on the unjust enrichment claim—laches is an
*(Footnote Continued Next Page)*

- 16 -

Following our review of the record, the briefs of the parties, the applicable law, and the trial court Opinion, we conclude that the trial court properly entered summary judgment in favor of Eric with respect to Donald's unjust enrichment and restitution claims. We affirm the trial court's decision to enter summary judgment in Eric's favor on these claims on the basis of its well-reasoned Opinion. ***See*** Trial Ct. Op. at 11, 13-14 (explaining that: (1) Donald's unjust enrichment claim is derivative of his claim for imposition of an implied trust because it "seeks restitution on the grounds that it would be inequitable for Eric to retain the benefits of Donald's expenditures in view of [Eric's] refusal to reconvey the properties to Donald"; and (2) Donald's claim for unjust enrichment is barred by the four-year statute of limitations). This claim, thus, fails to garner relief.

**H.**

In sum, having found Appellants' claims waived or lacking merit, we affirm the order of the trial court entering summary judgment in Eric's favor.

Order affirmed. Appellants are directed to append a copy of the trial court's December 20, 2022 Opinion to any future filings.

---

affirmative defense properly asserted by the defendant to defend against such a claim.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>12/29/2023</u>

FILED 1/12/2023 4:01 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2020-C-0881     /s/JW   Circulated 11/15/2023 02:28 PM

FILED 12/20/2022 2:54 PM,Clerk of Judicial Records, Civil Division, Lehigh County, PA
2020-C-0881     /s/JW

## IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | | | |
|---|---|---|---|
| ERIC BOYKO, | | : | NO.   2020-C-0881 |
| | Plaintiff, | : | |
| | | : | CIVIL ACTION |
| v. | | : | |
| | | : | ASSIGNED TO: |
| CARL N. BOYKO, | | : | Judge Thomas M. Caffrey |
| | Defendant. | : | |

| | | | |
|---|---|---|---|
| DONALD BOYKO, | | : | NO.   2021-C-0875 |
| | Plaintiff, | : | |
| | | : | CIVIL ACTION |
| v. | | : | |
| | | : | ASSIGNED TO: |
| ERIC BOYKO, | | : | Judge Thomas M. Caffrey |
| | Defendant. | : | |

| | | | |
|---|---|---|---|
| ERIC BOYKO, | | : | NO.   2022-C-0067 |
| | Plaintiff, | : | |
| | | : | CIVIL ACTION |
| v. | | : | |
| | | : | ASSIGNED TO: |
| CARL N. BOYKO, | | : | Judge Thomas M. Caffrey |
| | Defendant. | : | |

## MEMORANDUM OPINION

CAFFREY, J.

Appearances:

Arthur L. Jenkins, Esquire
    For Donald Boyko and Carl N. Boyko

Chad DiFelice, Esquire
    For Eric Boyko

## Overview [1]

Donald Boyko ("Donald") and Minnie Boyko ("Mary"), husband and wife, are the parents of Eric Boyko ("Eric") and Carl N. Boyko ("Carl"). Minnie died testate in March 2004.

There are ten real properties at issue in these consolidated cases. Eight of the properties were owned solely by Minnie. One property was owned by Donald and Minnie. One property was owned solely by Donald.[2] Nine properties are located in Lehigh County. One property is located in Luzerne County.

Donald is the owner of Boyko's Petroleum Services, Inc. ("BPS"). Approximately twenty years ago, BPS was the subject of a Department of Environmental Protection investigation. A plan was devised whereby the properties would be transferred to Eric and Carl in order to insulate the properties from the reach of the federal government. Donald, Eric, and Carl entered into an oral agreement whereby Donald would transfer the properties to Eric and Carl, who would then reconvey the properties to Donald upon his request. Donald transferred the properties to Eric and Carl in November 2004.[3]

After transferring the properties to Eric and Carl, Donald paid all of the taxes, insurance, maintenance, and improvements related to the properties in reliance on Eric and Carl's promise to reconvey the properties to him upon demand.

In 2006 and 2007, attorneys for Donald sent letters to Eric demanding that he reconvey the properties to Donald. Although Carl was willing to reconvey the properties to Donald, Eric refused to do so.

---

[1] For purposes of the pending motion for summary judgment, the facts are recited in a light most favorable to the non-moving parties.

[2] Unless noted otherwise, the ten properties are hereinafter referred to as the "properties."

[3] Under the terms of her Will, Minnie bequeathed to Donald the eight properties titled solely in her name. Donald executed an estate settlement agreement disclaiming his right to these properties, and, as executor of Minnie's estate, transferred these eight properties to Eric and Carl.

2

In 2018, Eric assaulted Donald. Donald appeared at the courthouse for the purpose of filing a petition for a protection from abuse ("PFA") order, but while at the courthouse, Donald and Eric reached an oral agreement whereby Eric renewed his promise to reconvey the properties to Donald in exchange for Donald's promise to refrain from seeking a PFA order.

### Consolidated Cases

There are three pending civil actions: 2020-C-0081, 2021-C-0875, and 2022-C-0067. These cases have been consolidated for purposes of discovery and trial.

### 2020-C-0081 and 2022-C-0067

Eric seeks partition of the properties in 2020-C-0081 and 2022-C-0067. Carl filed an identical counterclaim in each action. Carl alleges that Eric and Carl hold the properties in trust for Donald, and that Eric breached his contractual obligation to reconvey the properties to Donald. Carl seeks specific enforcement of Eric's duty to reconvey the properties to Donald.

### 2021-C-0875

Donald filed a Second Amended Complaint ("SAC") in 2021-C-0875.

In Count I, titled "Imposition of Trust," Donald alleges that, in November 2004, he entered into an oral agreement with Eric and Carl, whereby he would transfer the properties to Eric and Carl but the beneficial interest in the properties would remain with him; that Eric and Carl agreed to reconvey the properties to Donald upon his request; that Donald requested reconveyance of the properties but Eric refused to do so; and that Donald has sustained damages as a result of Eric's refusal to reconvey the properties to him. Donald requests that an implied trust be imposed upon the properties.

In Count II, titled "Imposition of Trust," Donald alleges that in 2018, Eric, in consideration of Donald's promise to refrain from seeking a PFA order, orally renewed his promise to reconvey

3

the properties to Donald, but, in breach of his confidential relationship with Donald, refused to reconvey the properties. Donald seeks the imposition of the implied trust plead in Count I.

In Count III, titled "Restitution/Damages," Donald alleges that he, as the beneficial owner of the properties, has expended approximately $600,000 in upkeep and carrying charges on the properties (¶ 17), and that Eric "is in breach of trust to reconvey the ... properties to Donald ... resulting in unjust enrichment to Eric ... which entitles plaintiff to restitution and damages for the breach of trust" (¶ 18).

Eric moved for summary judgment on September 30, 2022.[4] He seeks dismissal of the claims asserted by Donald in Count I, II, and III of the SAC in 2021-C-0875. In addition, he seeks dismissal of the counterclaims asserted by Carl in 2020-C-0881 and 2022-C-0067.

Carl and Donald filed a response to Eric's motion for summary judgment on October 31, 2022. The Court heard oral argument on Eric's motion for summary judgment on November 3, 2022. Following oral argument, the Court entered an Order on November 4, 2022, directing the Parties to file supplemental briefs. Carl and Donald filed a supplemental brief on November 10, 2022. Eric filed a supplemental brief on November 18, 2022. Carl and Donald filed supplemental citations on November 22, 2022.

---

[4] A record that supports summary judgment will either: (1) show the material facts are undisputed, or (2) contain insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury. Renna v. PPL Electric Utilities, 207 A.3d 355 (Pa. Super. 2019). "The moving party has the burden of proving the non-existence of any genuine issue of fact." Hoffman v. Pellak, 764 A.2d 64, 65-66 (Pa. Super. 2000). However, where, as here, a party moves for summary judgment on the basis that the record evidence is insufficient to make out a prima facie claim, "the non-moving party bears the burden of proof on an issue," Babb v. Centre County Hospital, 47 A.3d 1214, 1223 (Pa. Super. 2012), and "must present depositions, affidavits, or other acceptable documents that show there is a factual issue for a jury's consideration." DeWeese v. Anchor Hocking Consumer and Indus. Products Group, 628 A.2d 421 (Pa. Super. 1993). The court must examine the record in the light most favorable to Plaintiff, and all doubts as to the existence of a genuine issue of material fact must be resolved against Defendants. Ertle v. Patriot-News Co., 674 A.2d 1038, 1041 (Pa. 1996).

4

## Discussion

In Count I, titled "Imposition of Trust," Donald alleges that, in November 2004, he entered into an oral agreement with Eric and Carl, whereby he would transfer the properties to Eric and Carl but the beneficial interest in the properties would remain with him; that Eric and Carl agreed to reconvey the properties to Donald upon his request; that Donald requested reconveyance of the properties but Eric refused to do so; and that Donald has sustained damages as a result of Eric's refusal to reconvey the properties to him. Donald seeks imposition of an implied trust on the properties.

Carl asserts virtually the same theory of relief in the counterclaims he filed in 2020-C-0881 and 2022-C-0067. Carl alleges that Eric and Carl hold the properties in trust for Donald, and that Eric breached his obligation to reconvey the properties to Donald. Carl seeks specific enforcement of Eric's duty to reconvey the properties to Donald.[5]

---

[5] A party must have standing to assert a claim. See Bergudoll v. Kane, 731 A.2d 1261, 1268 (Pa. 1999). The concept of standing is premised on the idea that a person who seeks to use the court's dispute resolution process must be "aggrieved," that is, adversely affected by the matter he seeks to challenge. William Penn Parking Garage v. City of Pittsburgh, 346 A.2d 269, 280-81 (Pa. 1975). A party who is not aggrieved "has no standing to obtain a judicial resolution of his challenge." In re Hickson, 821 A.2d 1238, 1243 (Pa. 2003) (citation omitted). Both Donald and Carl allege that an implied trust arose in favor of Donald, that Eric breached his obligation to reconvey the properties to Donald, and that Donald suffered damages in connection with Eric's breach. Donald, not Carl, is "aggrieved" by Eric's alleged conduct, and therefore, Carl has no standing to assert his counterclaims. Even if Carl had standing to assert his counterclaims, they are, for the reasons stated *infra*, barred by the statute of limitations.

5

It is unclear from the pleadings which type of implied trust Donald and Carl seek to enforce. However, counsel for Donald and Carl clarified at oral argument that his clients seek enforcement of both a resulting trust and a constructive trust. Therefore, the Court will address the merits of both theories of relief.[6]

The Restatement (Second) of Trusts (1959) states the following regarding the creation of a resulting trust:

> Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a wife, child or other natural object of bounty of the person by whom the purchase price is paid, a result in trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property.

Restatement (Second) of Trusts § 442 (1959). See also Kohr v. Kohr, 413 A.2d 687, 689-690 (Pa. Super. 1979) ("The principles relating to the creation of a resulting trust are well established. If a parent furnishes the purchase money and title to property is taken in the name of a child, a presumption arises that the parent intended the funds to be a gift.").

The facts of this case do not fit within the parameters of a resulting trust. Although Eric and Carl are Donald's children, Donald did not pay the purchase price for the properties at the time that title to the properties vested in Eric and Carl. Donald already owned two of the ten properties

---

[6] Both theories of relief provide for the imposition of a trust in favor of a person who has transferred his ownership interest in real property. Eric raises the question as to whether Donald maintained an ownership interest in the eight properties owned solely by Minnie at the time of her death. Although Minnie bequeathed these properties to Donald under her Will, Donald executed an estate settlement agreement in which he renounced his right to inherit these properties, and transferred these eight properties to Eric and Carl in his capacity as the executor of Minnie's estate. Eric contends that Donald's lack of ownership interest in these eight properties precludes him from seeking the imposition of an implied trust related thereto. Donald and Carl contend that the estate settlement agreement is not an integrated document, and that the oral agreement reached among Donald, Eric, and Carl in November 2004 operates to modify the estate settlement agreement. Given the Court's disposition of this matter, it is not necessary to resolve this issue.

6

at the time he conveyed title to Eric and Carl, and Donald, as the executor of Minnie's estate, transferred title to the remaining eight properties to Eric and Carl during the administration of Minnie's estate. Therefore, Donald's claim for the enforcement of a resulting trust is dismissed as a matter of law.

"In accordance with the case law of this Commonwealth, a constructive trust may be decreed under two different theories." Kohr, 413 A.2d at 690. Pursuant to the Restatement (Second) of Trust § 44 (1959), a constructive trust arises if a transferee conveys property to another as a result of 'fraud, duress, undue influence or mistake, or ... the transferee at the time of the transfer was in a confidential relation to the transferor ...." See Kohr, 413 A.2d at 690. In addition, there must be "an actual promise by the transferee to hold the property in trust and a reliance upon that promise by the transferor." Id.

A constructive trust may also arise "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the grounds that he would be unjustly enriched if he were permitted to retain it ...." Restatement of Restitution § 160 (1937). See also Williams Township Board of Supervisors v. Williams Township Emergency Company, Inc., 986 A.2d 914, 922 (Pa. Super. 2009) ("[A] constructive trust may arise ... where a person holding title to property is subject to another on the ground that he would be unjustly enriched if he were allowed to retain the property."). "Unlike § 44 of the Restatement of Trust, this theory does not require an express promise to hold property in trust." Kohr, 413 A.2d at 691.

There are genuine issues of material fact as to whether a constructive trust arises under the facts of this case. Donald transferred the properties to Eric and Carl, and although there is no evidence of fraud, duress, undue influence or mistake, there is sufficient evidence from which the Court could conclude that Eric and Carl were in a confidential relationship with Donald at the time

7

of the transfer. See e.g., Silver v. Silver, 219 A.2d 659, 661 (Pa. 1966). ("Although no precise formula has been devised to ascertain the existence of a confidential relationship, it as been held that such a relationship is not confined to a particular association of parties but exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest."); Truver v. Kennedy, 229 A.2d 468, 474 (Pa. 1967) ("one stands to another in a confidential relationship where one occupies such a position as reasonably to inspire confidence in the other that he will act in good faith for the others' interest"). In addition, there is record evidence that Eric and Carl orally promised to reconvey the properties upon Donald's request and that Donald relied on this promise.[7]

Eric argues that Donald's claim for enforcement of a constructive trust is barred by the statute of limitations.[8] An action to enforce an implied trust is subject to the five-year statute of limitations set forth in 42 Pa. C.S.A. § 5526, which provides in relevant part as follows:

The following actions and proceedings must be commenced within five years:

\*\*\*

(3) An action to enforce any equity of redemption or any implied or resulting trust as to real property.

42 Pa. C.S.A. § 5526(3).

Under Pennsylvania law, "the statute of limitations begins to run as soon as the right to institute and maintain a suit arises." Fine v. Checcio, 870 A.2d 850, 857 (Pa. 2005) (citation omitted). When the right to institute and maintain a claim for enforcement of a constructive trust arises was established by the Pennsylvania Supreme Court in Silver. The Court, overruling prior

---

[7] The Statute of Frauds "ordinarily bars the introduction of any evidence of an oral agreement modifying a deed which on its face transfers land in fee simple." Moreland v. Metrovich, 375 A.2d 772, 775 (Pa. Super. 1977). However, "a constructive trust, being implied by law, is expressly excluded from the operation of the Statute. Silver, 219 A.2d at 661.

[8] Donald contends that a claim for enforcement of a constructive or resulting trust is not subject to a statute of limitations. He offers no legal authority in support of this proposition.

8

precedent holding that a claim to enforce a constructive trust accrues at the time of conveyance, stated: "Since no constructive trust exists until the grantee breaches his promise to reconvey, it is our view that the statute could not begin to run until that time, or until the grantor should reasonably know of the grantee's wrongful retention of the property." Silver, 219 A.2d at 663. See also Truver, 229 A.2d at 475 ("[T]he five-year period of limitation under [12 P.S. § 83] did not begin to run until the time the grantee had breached the promise to reconvey or until the time the grantor should reasonably know of the grantee's wrongful retention of the property.").[9]

Donald alleges that in November 2004 he transferred the properties to Eric and Carl based on assurances by Eric and Carl that they would reconvey the properties upon his request. In a letter from Attorney Weida to Eric, dated March 13, 2006, Attorney Weida advised Eric that Donald could not collect rent or deduct expenses related to the properties because the properties were not titled in his name, and requested that Eric execute deeds conveying his interest in the properties to Donald. Donald subsequently retained the services of Attorney Charles Stopp. In a letter from Attorney Stopp to Eric and Carl, dated March 1, 2007, Attorney Stopp advised Eric and Carl that Donald was requesting that the properties be reconveyed to him, and requested that they contact his office to make arrangements to sign the requisite documents. Donald's copy of this letter contains a note from Attorney Stopp to Donald, stating that if Eric did not comply and litigation became necessary, there were legal theories that could be used in the litigation. In a letter from Attorney Stopp to Eric, dated May 8, 2007, Attorney Stopp advised Eric that he had prepared

---

[9] Silver and Truver interpret the five-year statute of limitation in 12 P.S. § 83. However, 42 Pa. C.S.A. § 5526(3) is derived from 12 P.S. § 83. See 42 Pa. C.S.A. § 5526 (Bar Association Comment). See also In re Hart, 530 B.R. 293, 304 (U.S. Bankruptcy Ct. E.D. Pa. 2015) (implied trusts are subject to the five-year statute of limitations in 42 Pa. C.S.A. § 5526).

9

the requisite deeds, and requested that Eric contact his office to scheduled a time to stop by and sign the deeds.

Donald demanded that Eric reconvey the properties as early as March 2006, and demanded that Eric reconvey the properties at least two more times in 2007. Despite Donald's demand, and despite the fact that Carl was willing to reconvey the properties to Donald, Eric refused to reconvey the properties to Donald and did not sign the deeds prepared for this purpose. Even when the facts are viewed in a light most favorable to Donald, the inescapable conclusion is that as early as 2006, and certainly no later than 2007, Donald fully understood that Eric had breached his promise to reconvey the properties and intended to wrongfully retain his interest in the properties. Therefore, Donald's claim for enforcement of a constructive trust accrued no later than 2007, and the five-year statute of limitations under 42 Pa. C.S.A. § 5526(3) expired in 2012. Accordingly, Donald's claim for enforcement of a constructive trust, filed in 2021, is time barred.[10]

In Count II of the SAC, also titled "Imposition of Trust," Donald alleges that, in 2018, Eric, in consideration of Donald's promise to refrain from seeking a PFA order, orally renewed his promise to reconvey the properties to Donald, but, in breach of his confidential relationship with Donald, refused to reconvey the properties. Donald does *not* seek specific enforcement of an oral contract between Donald and Eric for reconveyance of the properties. As explained by counsel for Donald during oral argument, if Donald's claim in Count I for imposition of an implied trust is otherwise barred by the statute of limitation, Eric's "renewed promise" to reconvey the properties to Donald "re-starts" the statute of limitations, thereby allowing Donald to seek the imposition of the implied trust plead in Count I.

---

[10] As noted, the facts of this case do not support the theory of a resulting trust. However, even if they did, Donald's claim for enforcement of a resulting trust is also barred by the five-year statute of limitations in 42 Pa. C.S.A. § 5526(3).

10

The Court requested that counsel supply legal authority to support this proposition. Donald's counsel submitted photocopied pages from "Simpson on Contracts." Counsel refers to the theory of "renewal promise," but it appears that he is relying on the "acknowledgement doctrine," which provides that the statute of limitations may be tolled or its bar removed by a debtor's promise to pay an existing debt. See e.g., Huntingdon Finance Corp. v. Newtown Artesian Water Co., 659 A.2d 1052, 1054 (Pa. Super. 1995). Donald offers no authority, and the Court finds none, to support the proposition that the "acknowledgement doctrine" or theory of "renewal promise," which remove the bar of the statute of limitations where a debtor promises to pay an existing monetary debt, permits a plaintiff to proceed with an equitable claim for imposition of an implied trust that is barred by the statute of limitations.

To the extent that Donald seeks specific enforcement of an oral contract between Donald and Eric for reconveyance of the properties, enforcement of the purported oral contract is barred by the statute of frauds, and therefore, the claim for specific performance must be dismissed.

The Statute of Frauds provides:

> From and after April 10, 1772, all leases, estates, interests of freehold or term of years, or any uncertain interest of, in, or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, and not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary notwithstanding; except, nevertheless, all leases not exceeding the term of three years from the making thereof; and moreover, that no leases, estates or interests, either of freehold or terms of years, or any uncertain interest, of, in, to or out of any messuages, manors, lands, tenements or hereditaments, shall, at any time after the said April 10, 1772, be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing, or by act and operation of law.

33 P.S. § 1.

11

Oral contracts to convey real property violate the statute of frauds and are unenforceable. Fannin v. Cratty. 480 A.2d 1056, 1058 (Pa. Super. 1984). "The purpose of the [statute of frauds] is to avoid opportunity for fraud and perjury likely to result from oral conveyances of estates and lands …." Holland Furnace Company v. Keystone Dehydrating Company, 30 A.2d 872, 874 (1943). However, "[s]pecific evidence that would make recission of an oral contract inequitable and unjust will take such contract outside of the Statute of Frauds …." In re Estate of Brojak, 467 A.2d 1175, 1182 (Pa. Super. 1983). For example, "part performance" or an admission, either in the pleadings or at the trial, of the existence of the contract will remove the bar of the statute of frauds. Eastgate Enterprises, Inc. v. Bank & Trust Co. of Old York Road, 345 A.2d 279, 280-81 (Pa. Super. 1975). See also Sferra v. Urling, 195 A. 422, 425 (Pa. 1937) ("[A] contract within the statute of frauds will be accorded full legal effect if those who are entitled to the protection of the statute choose to affirm the existence of the contract and recognize it as binding on them."). In addition, "specific performance may be ordered where it appears that continuous and exclusive possession of the subject property was taken under the oral contract and improvements were made by the buyer not readily compensable in money." Concorde Investments, Inc. v. Gallagher, 497 A.2d 637, 640 (Pa. Super. 1985) (citation omitted).

None of the exceptions to the invocation of the statute of frauds are applicable here. Eric denies the existence of the purported oral contract and has not engaged in partial performance of the purported oral contract for his own benefit. See Brojak, 467 A.2d at 1182 ("[P]artial performance, which has benefitted the party invoking the Statute, will in appropriate circumstances, bar the invocation of the rule."). Furthermore, although Donald has maintained continued exclusive possession of the property on which his home is located, he did not take possession of this property and make improvements thereon pursuant to the oral contract

12

purportedly made in 2018, but rather has maintained exclusive possession of this property since purchasing it.

Count III of the SAC is titled "Restitution/Damages." Eric contends that Count III must be dismissed because it is derivative of Donald's claim for imposition of an implied trust that is barred by the statute of limitations. Donald contends that the restitution claim in Count III is pled alternatively to his claim for the imposition of an implied trust and stands alone, and therefore, is not time barred.

To prevail on a claim for unjust enrichment, a plaintiff must prove: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Walter v. Magee-Womens Hospital of UPMC, 876 A.2d 400 (Pa. Super. 2005). Donald alleges that he, as the beneficial owner of the properties, has expended approximately $600,000 in upkeep and carrying charges on the properties (¶ 17), and that Eric "is in breach of trust to reconvey the ... properties to Donald ... resulting in unjust enrichment to Eric ... which entitles plaintiff to restitution and damages for the breach of trust" (¶ 18). Therefore, although a party may certainly plead claims in the alternative, the unjust enrichment claim in Count III does not, contrary to Donald's assertion, stand alone. The unjust enrichment claim, as does Counts I and II, seeks restitution on the grounds that it would be inequitable for Eric to retain the benefits of Donald's expenditures in view of his refusal to reconvey the properties to Donald.

The statute of limitations on an unjust enrichment claim is four years. See 42 Pa.C.S.A. § 5525(a)(4). See also Cole v. Lawrence, 701 A.2d 987, 989 (Pa. Super. 1997) (plaintiff's claim for unjust enrichment based on a contract implied by law is subject to a four-year statute of

13

limitations). "The statute of limitations begins to run as soon as the right to institute and maintain suit arises; lack of knowledge, mistake, or misunderstanding do not toll the running of the statute of limitations." Kingston Coal Co. v. Felton Min. Co., 690 A.2d 284, 288 (Pa. Super. 1997) (internal citations omitted). Here, Donald knew as early as 2006, and certainly no later than 2007, that Eric would not reconvey the properties to him. Therefore, his unjust enrichment claim—seeking restitution premised upon Eric's breach of his duty to reconvey the properties—is clearly barred by the four-year statute of limitations.

### Conclusion

Eric's motion for summary judgment seeking dismissal of the claims asserted by Donald in Count I, II, and III of the SAC in 2021-C-0875 is granted.

Eric's motion for summary judgment seeking dismissal of the counterclaim asserted by Carl in 2020-C-0881 and the counterclaim asserted by Carl in 2022-C-0067 is granted.

An appropriate order will follow.

BY THE COURT:

Date: December 20, 2022

_____
Thomas M. Caffrey, J.

14